**DONALD M. GINDY** (SBN# 45228)
E-Mail: don@gindylaw.com
Law Offices of Donald M. Gindy
1925 Century Park East, Suite 650
Los Angeles CA, 90067
Telephone: (424) 284-3123

Attorney for Plaintiff,
VBCONVERSIONS LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| VBCONVERSIONS LLC, A California Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>RIHANI INTERNATIONAL, INC., a Rhode Island Corporation; DOES 1-10, inclusive;<br><br>Defendants. | Case No:<br><br>**COMPLAINT FOR:**<br><br>**1.COPYRIGHT INFRINGEMENT;**<br>**2.CONTRIBUTORY COPYRIGHT INFRINGEMENT;**<br>**3.VICARIOUS COPYRIGHT INFRINGEMENT;**<br>**4.VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, § 1201(a);**<br>**5.REQUEST FOR INJUNCTIVE RELIEF**<br><br>***Demand for jury trial*** |
|---|---|

1

**COMES NOW**, the plaintiff, VBConversions LLC ("VBC"), a California limited liability company, which hereby alleges that defendant Rihani International, Inc., a Rhode Island corporation, is liable to it for copyright infringement, contributory copyright infringement, vicarious copyright infringement and violation of the Digital Millennium Copyright Act, §1201(a)(1)(A) in connection with the plaintiff's copyrighted software entitled *VB.Net to C# Converter. Version 3.12* (hereinafter the "Program").   This action is based upon a federal question.

**A.    SUMMARY OF THE ACTION.**

This action seeks damages and injunctive relief upon defendants' unauthorized actions directed at plaintiff's copyrighted software, the Program. Briefly, an employee of Rihani gained unauthorized access to the Program and engaged in unauthorized copying, adaptation and distribution of the copyrighted material in violation of the Copyright Act, the DMCA and the VBC End User License Agreement ("EULA").

**B.    JURISDICTION.**

1.    This action arises under the Copyright Act of the United States, 17 U.S.C. §101 and §501, et seq and the Digital Millennium Copyright Act, 17 U.S.C. §1201(a)(1)(A).  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1338(a). Jurisdiction is further founded upon the defendants' affirmation of a provision in a licensing agreement that the parties agree to subject themselves to the personal jurisdiction of the courts of the State of California.

2.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) & §1400(a). Plaintiff further alleges venue is proper as the result of a Forum Selection Clause in the license agreement affirmed by defendants designating the County of Los Angeles, State of California, as the appropriate location for hearing in the event of a dispute arising out the license.

### C.   PARTIES

3.    VBConversions LLC (hereinafter "VBC") is a California limited liability company, whose principal office is located in Santa Monica, California. VBC engages in the licensing of its software product, the Program, on the Internet.

4.    Plaintiff is informed and believes and thereon alleges that Rihani International, Inc., is a Rhode Island corporation, with its principal headquarters located at 1647 Cranston Street, Cranston, RI 02920.  Upon information and belief, plaintiff alleges that Rihani is engaged in the business of international trading and management services and the import and export of dental, medical and scientific supplies and related products.

### D.   GENERAL ALLEGATIONS.

5.    Plaintiff has registered its program with the Register of Copyright and was given the registration number of TX 0008145113 for Version 3.12 of the above entitled program.  It was registered on November 3, 2015. A copy of the registration is attached hereto and incorporated by reference as **Exhibit "A."**

6.    VBC licenses its copyrighted program online at vbconversions.com. VBC offers its program in a trial version for a limited time to potential purchasers. In this instance, it is offered for 15 days and up to 2,000 lines of Visual Basic to convert in any one project.  A party is permitted to try out the program and see if it is suitable for their needs. If so, they may apply for a license by paying the standard market fee. Prior to being permitted to use the Trial version, a prospective purchaser must first affirm an End User Licensing Agreement ("EULA"). No registration code is issued to trial users, unless and until they purchase a license. Otherwise, the trial version of the program will not support conversion after 15 days.  A copy of the EULA is attached hereto as **Exhibit "B."**

7.    The purchaser of a license acknowledges and agrees that the license they receive has certain limitations.  The licensee is advised that the terms and conditions of the license make it "…revocable, limited, non-transferable and a non-

1  exclusive license to use the Software Products."  Moreover, the licensee is advised

2  it "…may install and use one copy of the Software Product on a single computer,

3  device, workstation, terminal, or other digital electronic or analog device

4  ("Device")."

5       8.    Plaintiff is unaware of the names and true capacities of Defendants,

6  whether individual, corporate and/or other entities, named herein as DOES 1

7  through 10, inclusive, and therefore sues them by their fictitious names. Plaintiff

8  will seek leave to amend this complaint when their true names and capacities are

9  ascertained. Plaintiff is informed and believes and thereon alleges that all of the

10  Defendants, known and unknown, are in some manner responsible for the wrongs

11  alleged herein and that at all times mentioned herein were the agents and servants

12  or joint venturers/partners-in-concert of the other Defendants, and acted within the

13  course and scope of said agency and employment or within the parameter of their

14  agreement.

15       9.    Plaintiff is informed and believes and thereon alleges that, at all times

16  relevant hereto, Defendants, and each of them, have engaged in and continue to

17  engage in the purchase and/or sale of goods and/or services within the County of

18  Los Angeles, State of California and have generally directed their activities at

19  California.

20       10.   Plaintiff is informed and believes and thereon alleges that, at all times

21  relevant hereto, Defendants and DOES 1-10, inclusive, knew or reasonably should

22  have known of the acts and behavior alleged herein and the damages caused

23  thereby, and by their inaction ratified and encouraged such acts and behavior.

24  Plaintiff further alleges that said Defendants have a non-delegable duty to prevent

25  or cause such acts and behavior described herein, which duty Defendants failed

26  and/or refused to perform. Plaintiff further alleges, upon information and belief,

27  that each act, transaction or event alleged was directed, hosted, served and routed

28  through computers, and a computer communication network, operated and

1    maintained by Defendant Rihani.

2    **GENERAL ALLEGATIONS**

3    11.    Visual Basic (VB) is a computer programming language developed

4 and sold by Microsoft Corporation since as early as 1991. Historically, it has been

5 among the most popular programming languages for use in business programming

6 and has long had one of the largest user bases of any programming language.

7 There is, therefore, a vast amount of software that has been developed over the

8 years in VB. Many of these VB programs are of significant complexity and size.

9    12.    Since 2000, however, the language C# (pronounced "C-Sharp"),

10 developed by Microsoft Corporation (but adopted as an international standard) has

11 taken the place of VB for much business programming, particularly that oriented

12 toward the Internet. C# is intended to be a simple, modern, general-purpose,

13 programming language. The language is intended for use in developing software

14 components suitable for deployment in many different environments. C# compilers

15 exist for most major computer operating systems, including Mac OS, Linux,

16 Windows, Solaris, etc. C# is suitable for writing applications for both hosted and

17 embedded systems.

18    The Copyrighted Software

19    13.    Because of the large body of legacy software existing in VB,

20 companies seeking to modernize their software often find that it is most practical to

21 undertake a process of converting their existing VB code to C#. Paying a

22 programmer to make the conversion line-by-line by hand can be extremely costly.

23    14.    In particular, Plaintiff is informed and believes and thereon alleges that

24 a skilled computer programmer very familiar with both VB and C#, working purely

25 by hand could typically, at best, convert 100 lines per hour from VB to C#.

26    15.    Plaintiff, therefore, developed VB.Net to C# Converter to automate

27 part of the conversion process, enabling conversions to be done substantially more

28 quickly, and, therefore, at significantly lower cost.

16.     VBC distributes and licenses the Copyrighted Software online at the Internet web site vbconversions.com.

17.     As discussed above, when the Copyrighted Software is downloaded and run, the user must affirm an End User Licensing Agreement before the program can be used.

18.     In spite of the complexity of the system, the Copyrighted Software is licensed under extremely reasonable terms. VBC employs the so-called shareware model, whereby an interested user is permitted to download a limited version of the Copyrighted Software in order to test it to see if it is suitable for his or her needs. (See 37 C.F.R. § 201.26) (Shareware programs offered in such time- or function-limited forms are often referred to as "trialware" or "demoware.")

19.     As initially downloaded, the Copyrighted Software may be used for up to fifteen (15) days. When this time limit is reached, the Copyrighted Software is disabled and ceases to function. Further, during that period, the Copyrighted Software will only function to convert VB projects consisting of up to two thousand (2,000) lines of code. It will not process larger projects.

20.     If the user is satisfied with the Copyrighted Software and wishes to continue to use it beyond the time and scope limitations applied to free use, the EULA requires the user to apply for a full-use license by paying the standard market fee. At that point, the user is provided an "unlock code" (or key) that removes the restrictions in the Copyrighted Software.

Cracking Sites and Unlicensed Use

21.     Over the years, unfortunately, a broad array of so-called "cracking sites" have appeared on the internet that are capable of generating and providing users with unauthorized unlock codes for the Copyrighted Software and many other shareware programs offered in the trialware/demoware model. These fraudulent registration codes are used in order to gain unlicensed and unlimited access to the subject program without the payment of the license fee to, or proper registration

with the developer/copyright owner.

22.     Despite its efforts, VBC has not been able to stem the tide of unscrupulous users who have used these means to gain unauthorized, unlicensed, and unlimited access to the Copyrighted Software.

23.     Such users have used the Copyrighted Software without license (and without any payment to VBC) to quickly convert vast amounts of VB code to the more modern and desirable C#. Such users thereby obtain significant financial benefit through their illicit, unlicensed infringing use.

Collection of Information Concerning Infringement

24.     In self-defense, VBC has adopted a tracking system whereby the Copyrighted Software reports its use to VBC's servers

25.     VBC is, thereby, able to record the details of substantially every instance of use of the Copyrighted Software (both legitimate and unauthorized copies). The information recorded identifies the date and time of the use, the public and private Internet Protocol ("IP") address of the computer on which the use occurs, the identity of the user of that computer (as recorded on that computer's operating system), the owner or organization responsible for operating the computer, and other data which is integral to proof of infringement.

26.     The collection of this usage data by the Copyrighted Software and its transmission to VBC is acknowledged and affirmed by the user as part of the EULA when the Copyrighted Software is first used.

**SPECIFIC ALLEGATIONS OF DEFENDANTS' INFRINGEMENT**

27.     VBC and Hitek have collected information demonstrating that Defendants bypassed the technological measures controlling access to the full featured version of the Copyrighted Software and then used the Copyrighted Software at least 16 times to convert lines of Visual Basic code and generate at least 727,200 lines of C# code.

28.     The quantity of C# code illegally generated by Defendants using the fraudulently-registered Copyrighted Software is, therefore, equivalent to approximately .035% if the same were in textual form.  In other words, the amount of C# would be roughly equivalent to 25,455 pages of text.  If the average book is 200 pages in length, it is equivalent to 127 books piled atop one another creating a good-sized library.

29.     Defendants used the Copyrighted software to convert and adapt this code from VB to C# without VBC's knowledge, license or consent.

30.     Even if a programmer could sustain a 100-line per hour *manual* translation rate over a long period (which is questionable), it would take nearly 7,300 programmer hours or more than 300 days to accomplish the conversion.

31.     On information and belief, on Friday, February 19, 2016, at 7:30 a.m. EST, a user employed by Rihani using a computer identified as "R-WORK04" in the domain "RIHANI.COM" installed and launched the capability-limited copy of the Copyrighted Software. The computer used had an external IP address of 68.15.32.50 and an internal address of 192.168.1.37.   At that time, the Copyrighted Software first ran, the user was presented with and accepted the EULA. The Copyrighted Software reported the acceptance of the EULA to VBC's server.

**Rihani's Hacking and Use of the Copyrighted Software**

32.     The user then proceeded to register the Copyrighted Software under the name "system" and email address none@avail.com and organization as "none." It's evident that the use of a false identity, or no identity here, discloses a guilty conscience and infers knowledge that the user is violating VBC's Exclusive Rights of Copyright set forth at 17 U.S.C. §106(1-6)

33.     It is obvious that, with the purpose of avoiding paying the licensing fee for the Copyrighted Software, the user searched the Internet and illicitly acquired this code which he then entered into the registration system.

34.     The EULA, which the user had just affirmed, specifically bars the use

of unauthorized registration keys. Only a 25 digit confidential alphanumeric registration key issued by VBC or its authorized delegate is permitted. The use of an unauthorized key amounts to circumvention of a technological measure in place to control access to the full version of the software and, therefore, is a direct violation of the DMCA at 17 U.S.C. §1201(a)(1)(A). The unauthorized registration key is noted to be: P7715-1006C-AM2R6-591Y6-EC067.

35.     Having violated the terms of the EULA, any license issued to the user and Rihani was revoked, and any subsequent copies of the Copyrighted Software made, including in-memory copies made when the Copyrighted Software was run, were unauthorized.

**FIRST CLAIM FOR RELIEF <u>Violation of 17 U.S.C.§106 &501, et seq.,</u>**
**<u>Copyright Infringement.</u>**

36.     Plaintiff incorporates by reference paragraphs 1 through 35, as if the same were set forth herein.

37.     Having illegally unlocked the Copyrighted Software on the 19th of February, 2016, the user converted Visual Basic code into approximately 179,704 lines of C#.  Six days later, on February 25th, commencing at 12:30 p.m. and concluding at 2:47 p.m., the user converted Visual Basic programming into approximately 547,520 lines of C# by reason of his unauthorized use of the Copyrighted Software. The approximate total of lines illegally converted to C# amount to 727,200. As a result, these two conversions processed over three-hundred-sixty-three times as many lines of code as allowed by the free trialware version. Proof of the illegal conversions noted above are attached hereto and incorporate by reference as **Exhibit "C."**

38.     The evidence is unequivocal that the user-employee has willfully infringed VBC's rights in the Copyrighted Software. The user obtained and introduced an unauthorized key code after first affirming the EULA, which set-in-motion apparent legitimate use under the license amounts to per se evidence of

Rihani's willful intent to circumvent the technological measures protecting the Copyrighted Software and to make infringing copies and use of the Copyrighted Software. Its willfulness entitles VBC to the maximum permitted for Statutory Damages of $150,000.00.

**SECOND CLAIM FOR RELIEF:   <u>Contributory Copyright Infringement</u>.**

39.    Plaintiff incorporates by reference paragraphs 1 through 38, as if the same were set forth fully herein.

40.    As employer of the user, Rihani knew or had reason to know that its employee had gained unauthorized access and unauthorized usage of the Copyrighted Software and was using same for the benefit of the company despite the clear warnings found in the EULA.

41.    By reason of its knowledge stated above, defendant Rihani aided and abetted the actions of its employee and materially contributed therein by supplying the data and equipment necessary to pirate the Copyrighted Software and turning a blind eye to subsequent acts of its employee by permitting that person to continue its wrongful actions against plaintiff.

42.    Defendants, and each of them, are jointly and severally liable to Plaintiff in Actual Damages of a sum unknown at this time, but for all profits attributable to the infringements, according to proof at time of trial.   In the alternative, defendants are jointly and severally liable for Statutory Damages of $150,000.00, as and for the willful and intentional infringement and unauthorized access, copying and usage of plaintiff's copyrighted programs.

**THIRD CLAIM FOR RELIEF: <u>*Vicarious Copyright Infringement*</u>**

43.    Plaintiff incorporates by reference paragraphs 1 through 42,  inclusive, as if the same were set forth fully herein.

44.    Plaintiff is informed and believes and thereon alleges that at all times relevant to the actions complained of herein the employer, Rihani had the right and ability to oversee, govern, control and direct its employee's actions, including, but

not limited to, halting any adverse conduct in which its employee is engaged, such as, preventing the continued unauthorized copying, adaptation and distribution of the Copyrighted Software. Yet, despite its awareness, Rihani failed to enforce the terms of the EULA upon its user-employee, which led to the vast number of lines wrongfully converted to C#.

45.   Plaintiff further alleges that as a proximate result of defendants' conduct, defendants have profited in an amount and in a manner that would not have taken place, but for the purloining of plaintiff's copyrighted software by its employee. Accordingly, defendants' have gained a direct financial benefit to which it is not entitled.

46.   Under the circumstances outlined above, defendants, and each of them, are liable to plaintiff for Statutory Damages as willful vicarious copyright infringers in the amount of $150,000.00. Defendants' are also liable for Actual Damages in an amount unknown at this time, but according to proof at time of trial.

**FOURTH CLAIM FOR RELIEF: _Violation of the Digital Millennium Copyright Act, §1201(a)(1)(A)._**

47.   Plaintiff incorporates by reference paragraphs 1 through 46, inclusive, as if the same were set forth fully herein.

48.   At all times mentioned herein, VBC had in force a *confidential* 25 digit alphanumeric code designed to control access to its copyrighted software.  It is only when a legitimate purchaser affirms the terms and conditions of the End User Licensing Agreement and pays the standard market fee that unlimited access to the licensed product is permitted. When adherence is satisfied plaintiff will issue to the licensee a non-exclusive, non-transferable license and provide legitimate code enabling unlimited access to the copyrighted program.  That is not what occurred here in the absence of a legitimately issued license to defendants.

49.   The code is intended as a technological measure for the purpose of

protecting VBC's proprietary program. To gain access requires knowledge of the 25 digits issued by plaintiff. It is intended to exclude those who seek to circumvent the code and gain unauthorized access.

50.　　The true number of acts of circumvention is unknown at this time, but plaintiff is informed and believes and thereon alleges that at least 16 occasions recited above occurred.

51.　　As a consequence of defendants' unlawful and unauthorized circumvention of plaintiff's measures, plaintiff has sustained damages as previously set forth herein.

52.　　The use of the circumvention device to gain access is an intentional and knowledgeable act by the defendants.  It is therefore willful and subjects defendants jointly and severally liable for the maximum allowed for Statutory Damages per act of circumvention or $2,500.00 on 16 occasions for a total of $40,000.00. Alternatively, Plaintiff is entitled to Actual Damages for profits attributable to the acts of circumvention per 17 U.S.C. § 1203(c)(2), according to proof at time of trial.

**WHEREFORE**, plaintiff prays that the Court issue the following:

A.　　Defendant be enjoined during the pendency of this action and permanently thereafter from appropriating, using or otherwise benefitting from plaintiff's copyrighted application software identified above without the express written approval of plaintiff or its delegate;

B.　　Defendants be ordered to identify, preserve, set aside and retain any and all source code and executable files used by them in the in the infringement alleged above pursuant to Federal Rule of Civil Procedure 34, which includes, but is not limited to:(i) all electronically stored information which contains any portion of plaintiff's copyrighted program; (ii) all writings as defined in Federal Rule of Evidence 1001, which refer to or

mention in any manner plaintiff's program, except to those items based on privilege.

C.     Pay plaintiff all damages sustained by him as the result of their unlawful acts, with prejudgment interest, as well as account for and pay for all gains and profits they have enjoyed at plaintiff's expense. In particular, Plaintiff demands compensation of at least $150,000.00 as and for Statutory Damages under the Copyright Act or Actual Damages for profits attributable to the infringement, both direct and indirect, according to law.

D.     Plaintiff demands at least $40,000.00 for violation of the applicable sections of the Digital Millennium Copyright Act, §1201(a), et seq., over and above those damages recited under the Copyright Act of 1976;

E.     Trial by jury.

F.     All costs of litigation, costs of suit, reasonable attorney fees and interest accrued at legal rates.

G.     Such other and further relief as the Court deems just under the circumstances.

DATED: November 8, 2016          **LAW OFFICES OF DONALD M. GINDY**

By: _____

 Donald M. Gindy
 Attorney for Plaintiff
 VBConversions LLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR TRIAL BY JURY**

PLEASE TAKE NOTICE that Plaintiff VBCONVERSIONS, LLC hereby demands a jury trial in this action.

DATED: November 8, 2015          **LAW OFFICES OF DONALD M. GINDY**

By: _____

Donald M. Gindy
Attorney for Plaintiff
VBConversions LLC

COMPLAINT